# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUDY MCFARLAND WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-15-11-SPS |

## OPINION AND ORDER

The claimant Judy McFarland Williams requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born December 21, 1960, and was fifty-one years old at the time of the most recent administrative hearing (Tr. 321). She has an eleventh grade education and has worked as a bakery line worker, electronic assembly line worker, and an electric motor assembly line worker (Tr. 63, 372). The claimant alleges that she has been unable to work since June 20, 2008, due to tendonitis in both wrists, high blood pressure, anxiety, and problems with her left shoulder, knees, and feet (Tr. 321, 325, 367).

## Procedural History

On June 4, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 27, 2010 (Tr. 119-29). The Appeals Council remanded the case to the ALJ on May 11, 2012 (Tr. 141-42). ALJ Deborah L. Rose conducted a second administrative hearing and determined the claimant was not disabled in a written opinion dated May 20, 2013 (Tr. 20-34). The Appeals Council denied review, so the ALJ's May 20, 2013, written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation. She found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except she could frequently handle, finger, and reach overhead (Tr. 24). Additionally, the ALJ found the claimant could perform only simple, routine, and some complex tasks, such as those involved in semi-skilled work; could perform superficial and incidental work-related interaction with co-workers, supervisors, and the public; and could adapt to a work setting (Tr. 24). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a bakery line worker, electronic assembly line worker, and an electric motor assembly line worker, or alternatively, because there was work she could perform in the regional and national economies, *e. g.*, laundry presser, cafeteria attendant, office helper, clerical mailer, and assembler (Tr. 31-34).

### Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of consultative examiner Dr. Melinda Shaver. The undersigned Magistrate Judge agrees and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's diabetes mellitus with neuropathy, obesity, carpal tunnel syndrome, left shoulder impingement, major depressive disorder, posttraumatic stress disorder, and panic disorder were severe impairments (Tr. 22-23). The medical evidence relevant to this appeal shows the claimant sought mental health treatment once in 2007 and once in 2008 (Tr. 514, 560). At a June 2009 appointment at

the Tahlequah Health Center, the claimant's provider prescribed medication for anxiety, and she agreed to initiate counseling within the next month (Tr. 510-11).

The claimant established care with advanced practice nurse Vicki Moore on July 13, 2009 (Tr. 619). At this initial appointment, the claimant reported depression and frequent anxiety attacks (Tr. 619). Ms. Moore managed the claimant's psychotropic medications from July 2009 through July 2010, and from June 2012 through October 2012 (Tr. 590-620, 767-74).

Dr. Melinda Shaver conducted a psychological consultative examination of the claimant on August 19, 2009 (Tr. 522-26). Dr. Shaver noted that the claimant's mood appeared depressed, affect was flattened, thought content was appropriate, sensorium appeared clear, insight and judgment were good, and knowledge of general information was poor (Tr. 522, 524). As to the claimant's memory, Dr. Shaver noted the claimant's remote memory was good, but that her recent memory was poor (Tr. 524). The claimant could recall only one of three objects after five minutes and could spell "world" forward but not backward (Tr. 524). Although the claimant could do five forward digit spans and three backward digit spans, she was unable to do serial sevens from one hundred or serial threes from forty without a pencil and paper (Tr. 524). Dr. Shaver opined that "it appears that Ms. McFarland is unable to complete tasks in a timely and appropriate manner because of her physical and mental health problems." (Tr. 523). Dr. Shaver diagnosed the claimant with posttraumatic stress disorder, major depressive disorder (recurrent, moderate intensity), and panic disorder without agoraphobia (Tr. 525). Her emotional

prognosis for the claimant was guarded, but stated the claimant's mental health treatment and medications were helpful (Tr. 525).

On August 28, 2009, the claimant initiated counseling with licensed professional counselor Mary Mullican and reported a recent panic attack, but no depression (Tr. 570). Ms. Mullican stated the claimant's panic attacks were infrequent, but that "she can obsess about them," and noted she did not exhibit any extreme emotional concerns (Tr. 570). The claimant followed up with Ms. Mullican on September 24, 2009, and stated that she felt she did not need counseling (Tr. 569). Ms. Mullican noted the claimant was pleasant with no apparent distress from psychological issues (Tr. 569). The claimant had two additional counseling sessions with Ms. Mullican in October 2010 and November 2010 (Tr. 721-22). On November 17, 2010, Ms. Mullican observed the claimant's affect was slightly blunted and that she appeared slightly fatigued, but the claimant reported feeling much better than she had in the past (Tr. 722).

After two emergency room visits for suicidal ideation over a period of two days in August 2010, the claimant presented to the Tulsa Center for Behavioral Health ("TCBH") on August 20, 2010, and reported intermittent suicidal ideations and a recent increase in depression (Tr. 670-96). A discharge plan dated August 25, 2010, indicated the claimant's mood was stable, that she was compliant with her medications, and referred her to Bill Willis Community Mental Health Center (Tr. 694).

On September 8, 2010, Dr. Peggy Jewell conducted a psychiatric assessment of the claimant (Tr. 724-27). Dr. Jewell observed that the claimant's mood was depressed, affect was blunted, and thought processes were rational and goal directed (Tr. 724-25).

Regarding attention and memory, Dr. Jewell noted the claimant was unable to do serial sevens or spell "world" backward, and although she could only recall past presidents to Obama, she could recall three out of three objects immediately and after five minutes (Tr. 725). Dr. Jewell diagnosed the claimant with major depressive disorder, recurrent, and prescribed medications (Tr. 725-26).

State reviewing psychologist Dr. Carolyn Goodrich reviewed the claimant's records on September 24, 2009, and concluded that she had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace, but only mild limitations in activities of daily living (Tr. 528-45). On the Mental RFC Assessment, Dr. Goodrich opined that the claimant was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 542-43). Dr. Goodrich concluded that the claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation (Tr. 544).

On May 16, 2011, state reviewing psychologist Dr. Jill Rowan affirmed an unsigned and undated Psychiatric Review Technique (PRT) form which indicated the claimant had moderate limitations in maintaining concentration, persistence, or pace, but only mild limitations in activities of daily living and in maintaining social functioning (736-50). The claimant's difficulty with attention at Dr. Jewell's September 2010 mental status exam was specifically mentioned in the consultant's notes, however, it was also noted that the claimant should nonetheless be able to adjust to a work setting (Tr. 749). Dr. Rowan also affirmed an unsigned and undated Mental RFC Assessment wherein it

was opined that the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, and in her ability to interact with the general public (Tr. 752-53). Dr. Rowan affirmed the conclusion that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 751-54).

Regarding her mental health, the claimant testified at the most recent administrative hearing that she has anxiety attacks up to three days per week (Tr. 56-57). She stated her attacks are not triggered by anything specific and can happen at any time (Tr. 56-57). She further stated she can manage her symptoms while at home, but that they increase when she goes out in public (Tr. 57). The clamant also testified that she has difficulty focusing (Tr. 62). As to her medications, the claimant testified she takes them as directed without any side effects, and believes her depression and anxiety are controlled "the best they can." (Tr. 58, 60).

In her written opinion, the ALJ discussed the claimant's hearing testimony and function report, and summarized the medical evidence. As to the relevant opinion evidence, the ALJ gave great weight to Dr. Shaver's opinion because it was consistent with the State agency's mental assessments and the other psychological records (Tr. 30). The ALJ also gave great weight to state agency psychologist Dr. Goodrich's opinion because it was consistent with both the claimant's very limited history of mental health treatment and with Dr. Shaver's findings (Tr. 30). As to state agency psychologist Dr. Rowan, the ALJ gave her opinion significant weight because it was based on all of the mental health records and was consistent with Dr. Goodrich's opinion (Tr. 30-31).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of Dr. Shaver's report, but appeared to leave out negative findings related to the claimant's ability to sustain attention and concentration, and timely complete tasks. This was particularly important because the ALJ *also* ignored Dr. Jewell's September 2010 test results regarding the claimant's attention which were similar to Dr. Shaver's results, and because neither Dr. Goodrich nor Dr. Rowan noted *both* Dr. Shaver's report and Dr. Jewell's report when rendering their opinions. Dr. Goodrich mentioned Dr. Shaver's report, but she too left out the findings as to the claimant's attention and concentration, and Dr. Rowan did not

even mention Dr. Shaver's report. Additionally, the ALJ adopted Dr. Shaver's findings regarding the presence of the claimant's severe mental impairments, but ignored both her test results showing the claimant was unable to do serial subtraction or spell "world" backward, and her opinion that the claimant appeared unable to timely and appropriately complete tasks. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Shaver's findings according to the appropriate standards and indicating what weight she was assigning to them, the ALJ should have explained why she found certain aspects of Dr. Shaver's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to analyze probative evidence potentially inconsistent with her RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**